IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

JOSEPH D. HUNTLEY,

    Petitioner,

v.                                                                                          No. 1:19-cv-01251-JDB-jay
                                                                                       Re: No. 1:16-cr-10013-JDB-1

UNITED STATES OF AMERICA,

    Respondent.

ORDER DENYING § 2255 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner, Joseph D. Huntley,[1] has filed a pro se motion to vacate, set aside, or correct his sentence (the "Petition") pursuant to 28 U.S.C. § 2255. (Docket Entry ("D.E.") 1.)[2] For the following reasons, the Petition is DENIED.

BACKGROUND

In January 2016, Special Agent Scott Lawson, an eight-year veteran of the Federal Bureau of Investigation, became involved in the probe of a possible drug conspiracy implicating Huntley.[3] In connection with the investigation, the agent prepared an affidavit in support of an application for a search warrant for the Defendant's residence in Scotts Hill, Tennessee. Information provided

---

[1] The Court will refer to Huntley as "the Defendant" in its discussion of his criminal case.

[2] Unless otherwise indicated, record citations herein are to documents filed in the present case.

[3] A more detailed discussion of Lawson's investigation and the information contained in his warrant affidavit is set forth in the Court's order of July 12, 2017, which was entered in Petitioner's criminal case. (See United States v. Huntley, No. 1:16-cr-10013-JDB-1 (W.D. Tenn.) ("No. 1:16-cr-10013-JDB-1"), D.E. 189 at PageID 537-42.) The order's factual findings were based on Lawson's suppression hearing testimony and his warrant affidavit. (See id., D.E. 184 & Ex. 1.)

by two confidential sources, identified in the affidavit as CS1 and CS2, was used to support the affidavit.

CS1 informed Lawson that he had obtained three to five ounces of methamphetamine every week from Huntley for approximately a year and had traded firearms for drugs. He explained that, on at least a monthly basis, the Defendant flew from Nashville to California, where he had previously resided, to purchase methamphetamine from contacts he maintained there. He would then rent a vehicle in California and drive it back, with the drugs, to his Scotts Hill residence. On February 2, 2016, CS1 notified law enforcement that the Defendant had told him he was in California and would return to Tennessee in a "couple of days" with methamphetamine.

CS2, who bought methamphetamine from Huntley on several occasions, advised law enforcement in January 2016 that the Defendant told him that he and another individual traveled by plane to California and then drove back to Tennessee with methamphetamine. In the late afternoon of February 4, 2016, CS2 notified Lawson that Huntley advised him he would be returning the next evening from California with methamphetamine. According to the source, the Defendant kept drugs at his home.

Lawson obtained information that Huntley had made numerous cash deposits in California banks. He also interviewed employees of Enterprise Rent-A-Car who provided records from April through November 2015 reflecting seven one-way car rentals by Huntley over a six to seven month period.

On the evening of February 4, 2016, Lawson, accompanied by an assistant United States Attorney, arrived at the home of Magistrate Judge Edward G. Bryant to present a warrant application for the search of Huntley's residence. While there, Lawson received a telephone call

from CS2 advising the agent that he had just heard from Huntley, who stated he had returned to his home with the methamphetamine and requested that CS2 come to the house. This information was made known to the magistrate judge. The warrant was issued at that time and was executed on the residence on February 5, 2016, at 6:00 a.m. The Defendant was arrested and numerous items were seized.

In a twenty-nine-count superseding indictment entered on July 25, 2016, Huntley was charged with distributing and possessing with the intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, attempting and conspiring with others to do so in violation of 21 U.S.C §§ 841(a)(1) and 846, and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (No. 1:16-cr-10013-JDB-1, D.E. 37.) On May 23, 2017, appointed defense counsel, Scott Kirk, filed a filed a motion to suppress the evidence seized by law enforcement during the search of the Defendant's home. (*Id.*, D.E. 161.) Counsel argued therein that the search warrant was an anticipatory warrant[4] for which officers failed to establish probable cause.

The Court conducted a hearing on the suppression motion on June 22, 2017. (*Id.*, D.E. 182.) Special Agent Lawson testified at that proceeding about his investigation into the Defendant's drug trafficking activities and the information he provided in the warrant affidavit. (*Id.*, D.E. 184.) The motion was denied in a written order entered on July 12, 2017. (*Id.*, D.E. 189.) In the order, the Court assumed, without deciding, that the "warrant was of an anticipatory

---

[4] "An anticipatory search warrant is a search warrant that by its terms takes effect not upon issuance but at a specified future time," that is, when a "triggering" condition occurs. *United States v. Penney*, 576 F.3d 297, 310 (6th Cir. 2009) (quoting *United States v. Miggins*, 302 F.3d 384, 395 (6th Cir. 2002)) (alteration omitted).

3

nature" and, "[b]ased on the totality of the circumstances," found that the warrant was supported by probable cause. (*Id.*, D.E. 189 at PageID 545, 547.) The Court further held that, "[e]ven if the [warrant] affidavit did not contain details sufficient to establish probable cause," the evidence was admissible pursuant to the good-faith exception articulated in *United States v. Leon*, 468 U.S. 897 (1984). (*Id.*, D.E. 189 at PageID 547.)

The Defendant subsequently entered into a plea agreement with the Government. (*Id.*, D.E. 198.) By that document he agreed to plead guilty to one count each of participating in a drug trafficking conspiracy and being a felon possession of a firearm. He also waived his appeal rights, with the exception that he reserved his right to appeal the denial of his suppression motion. On August 17, 2017, he entered his guilty plea in open court. (*Id.*, D.E. 197.)

The undersigned conducted a sentencing hearing on November 15, 2017. (*Id.*, D.E. 218.) At the proceeding, counsel called as a character witness the Defendant's adult daughter, who at that time lived in California near other family members. (*Id.*, D.E. 234 at PageID 705-08.) The daughter testified that her father was a loving parent and that he often visited her and other family members during his trips to California. (*Id.*, D.E. 234 at PageID 706-07.) Upon consideration of the evidence, the parties' arguments, the information contained in the presentence report, and the relevant sentencing factors, the undersigned imposed an effective sentence of 260 months' incarceration and five years of supervised release. (*Id.*, D.E. 218.)

The Defendant took a direct appeal. (*Id.*, D.E. 224.) Attorney Kirk, still representing Huntley, argued that the Court erred in denying the suppression motion. (*Id.*, D.E. 224, 256 at PageID 829.) He posited, as he had at the suppression stage, that the warrant was an anticipatory warrant whose triggering conditions had not been met. (*Id.*, D.E. 256 at PageID 829.) The Sixth

4

Circuit found that the warrant was not anticipatory, but that, even assuming it was not supported by probable cause, the good faith exception applied. The court therefore affirmed the denial of the suppression motion.

## DISCUSSION

Huntley filed the Petition on October 18, 2019. He asserts in Claim 1 that counsel rendered ineffective assistance at the suppression hearing by failing to call Petitioner's daughter to testify that he visited family during his trips to California. In Claim 2, the inmate posits that counsel was ineffective on direct appeal by failing to challenge the Court's application of the good faith exception to the exclusionary rule. Respondent United States of America filed a response to the Petition on April 7, 2020 (the "Response"). (D.E. 6.) The Government maintains that the claims are belied by the record in the underlying criminal case and are thus without merit. Petitioner submitted a reply on April 23, 2020, reiterating his arguments (the "Reply").[5] (D.E. 7.)

I.  Legal Standards

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted). "In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (internal quotation marks omitted). "[N]o hearing is required," however, "if the

---

[5] A duplicate copy of the Reply was docketed on April 24, 2020. (D.E. 8.) The Court's review of the document confirms that it is identical to the Reply.

petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." [6] *Id.* A petitioner has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel alleges an error of constitutional magnitude cognizable in a § 2255 proceeding. *See id.* Such a claim is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* at 966. To succeed on an ineffective-assistance claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

---

[6] A hearing is not necessary in the present matter because, as will be discussed infra, the claims are belied by the record.

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693) (citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

*Strickland*'s two-part test applies to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). A petitioner meets the deficient performance prong by showing that "his appellate counsel made an objectively unreasonable decision by choosing to raise . . . other issues instead of" the challenged issue, "meaning [the challenged] issue 'was clearly stronger than issues that counsel did present.'" *Webb v. Mitchell,* 586 F.3d 383, 399 (6th Cir. 2009) (quoting *Robbins*, 528 U.S. at 285, 288). The prejudice prong requires a petitioner to "demonstrate 'a reasonable probability that, but for his counsel's unreasonable failure to' raise th[e] issue on appeal, 'he would have prevailed.'" *Id.* (quoting *Robbins,* 528 U.S. at 285).

II.   Claim 1

Petitioner posits in Claim 1 that counsel was ineffective for failing to call his daughter at the suppression hearing to testify, as she did at sentencing, that Huntley visited family during his trips to California. He insists that such evidence would have established that the "purpose of [his] travel to California [was not] drug trafficking" and would have explained his "repeated car rentals." (D.E. 1-1 at PageID 20-21.) He argues that had his daughter been called as a witness he

7

would have prevailed on a two-fold argument that (1) the warrant was not supported by probable cause and (2) the good-faith exception did not apply because the affiant's failure to mention the family visits amounted to "a reckless disregard for the truth." (*Id.* at PageID 21.) Petitioner's position is not well taken.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and specifies that "no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation[.]" U.S. CONST. amend. IV. "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion, and is found to exist when there is a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006) (citations and internal quotation marks omitted). "Review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit." *Id.* (citing *United States v. Frazier,* 423 F.3d 526, 531 (6th Cir. 2005)).

It is not necessary for a finding of probable cause that the warrant affidavit exclude "every contrary" theory. *United States v. Alfano,* 838 F.2d 158, 162 (6th Cir. 1988). In *Alfano*, law enforcement officers gathered evidence of a "a recurring pattern of multiple connections among . . . phone calls . . . between . . . recognized members of the conspiracy," some of whom were related by marriage. *Id.* at 162. That evidence, and other information, was used to secure a warrant for a wiretap. *Id.* at 160. The defendant argued that probable cause was lacking because the phone calls discussed in the warrant affidavit "could have simply involved innocuous family matters." *Id.* at 162. The court rejected the argument, finding that probable cause supported the warrant. *Id.* at

8

162-64. The court emphasized that "the probable cause requirement does not require that every contrary hypothesis be excluded." *Id.* at 162. Instead, all that is required is that "[t]he circumstances . . . provide a person of reasonable caution, as represented by a neutral and detached magistrate, with evidence from which he could find that there was a likelihood that the [illegal] business . . . was being furthered." *Id.*

"When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure." *Illinois v. Krull*, 480 U.S. 340, 347 (1987) (citing *Weeks v. United States,* 232 U.S. 383 (1914) and *Mapp v. Ohio,* 367 U.S. 643 (1961)). The exclusionary rule does not apply, however, where the "evidence [was] obtained [by law enforcement] in objectively reasonable reliance on a subsequently invalidated search warrant[.]" *Leon*, 468 U.S. at 922. That principle is known as the "good faith exception" to the exclusionary rule. *See United States v. Savoca,* 761 F.2d 292, 294 n. 1 (6th Cir. 1985) ("For the sake of convenience, we will refer to the rule in *Leon* as the "good faith" exception notwithstanding the fact that the Court in *Leon* itself used slightly different terminology[.]")

"But the good-faith exception . . . is itself subject to exceptions[.]" *United States v. Porter*, No. 1:17-CR-00015, 2018 WL 2463103, at *5 (M.D. Tenn. June 1, 2018), *aff'd*, 774 F. App'x 978 (6th Cir. 2019). For instance, "[s]uppression . . . remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth." *Leon*, 468 U.S. at 923; *see also United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (citing *Leon,* 468 U.S. at 914–923). Although "an affidavit which omits potentially exculpatory information is less

9

likely to present a question of impermissible official conduct than one which affirmatively includes false information," *United States v. Adkins,* 107 F.3d 1213, 1217 (6th Cir. 1997), a material omission may nonetheless constitute a reckless falsity. *See United States v. West*, 520 F.3d 604, 611-12 (6th Cir. 2008)). In *West*, the Sixth Circuit held that "the *Leon* good faith exception [did] not apply to save the [warrant] affidavit" because that document mentioned the defendant's alleged confession to an informant but omitted numerous pieces of subsequently obtained information that "undermined" the confession. *Id.* The court found that the affidavit provided the magistrate judge with "an incomplete and misleading" view of the circumstances, and thus "evince[d] a reckless disregard for the truth." *Id.*

For a petitioner to prevail on an assertion that counsel provided ineffective assistance by failing to raise a particular suppression issue, he must demonstrate that "the meritorious nature of the [argument is] so plain that 'no competent attorney would think a motion to suppress [on that ground] would have failed.'" *Hendrix v. Palmer*, 893 F.3d 906, 922 (6th Cir. 2018) (quoting *Premo v. Moore*, 562 U.S. 115, 124 (2011)). "A petitioner also must show that counsel had no reasonable strategic rationale for not" making the argument. *Id.* (citing *Davis v. Lafler*, 658 F.3d 525, 537 (6th Cir. 2011) (en banc)).

In the present matter, Huntley cannot establish that counsel was ineffective since the meritorious nature of a family-visits argument was not so plain that no competent attorney would think that it would have failed. More specifically, although evidence of family visits might have provided some support for a "contrary hypothesis" for why Petitioner made the trips, the warrant affidavit need not have addressed or ruled out that different explanation. *Alfano,* 838 F.2d at 162. That is particularly so since evidence of Petitioner's visits to family in California would not have

10

precluded a dual purpose of visiting family *and* trafficking in drugs. The latter goal was supported by, among other things, the warrant affidavit's reference to information about an individual who had previously accompanied Petitioner on a drug-buying trip to California, a confidential informant's statement to law enforcement that Huntley had advised him that he would be returning to Tennessee from California with methamphetamine, evidence of multiple one-way car rentals, and bank deposits made in California. Therefore, notwithstanding that Petitioner may have visited family during his trips to California, the information in the warrant affidavit constituted evidence from which a person of reasonable caution could have concluded that the trips to California were in furtherance of drug trafficking.

Evidence of family visits also would not have rendered the good-faith exception inapplicable. More to the point, because visiting family would not have precluded drug trafficking, the omission of that information from the warrant affidavit did not paint a misleading picture. The omission therefore cannot be said to have evinced a reckless disregard for the truth. *Cf.*, *United States v. Perry*, No. 06-20172-BC, 2007 WL 1017570, at *4 (E.D. Mich. Apr. 3, 2007) (adopting report and recommendation) (search of the defendant's residence for evidence of drug trafficking was not rendered illegal by the warrant affidavit's failure to mention that the defendant also used the home for his "snow plowing business" and that the defendant and his co-conspirator brother "got together on almost daily basis to watch 'the Price is Right' on television").

In sum, Petitioner has failed to overcome the strong presumption that counsel's decision to present the anticipatory-warrant argument and forego evidence of family visits reflected a strategic choice that fell within the wide range of reasonable representation. Claim 1 is therefore DENIED.

III.    Claim 2

Petitioner asserts in Claim 2 that counsel rendered ineffective assistance on direct appeal by "failing to argue that the affidavit which resulted in issuance of the search warrant . . . was prepared with reckless disregard for the truth, as a means to refute the district court's reliance on the good faith exception to the exclusionary rule, along the lines set forth" in Claim 1. (D.E. at 1-1 at PageID 26.)  The Government maintains that the claim is without merit.  The Court agrees.

The Court has already determined that counsel was not ineffective for failing to introduce at the suppression hearing evidence that Petitioner visited family during his trips to California.  For the same reasons counsel's conduct in that regard did not deprive Huntley of effective assistance, his failure to raise on appeal a family-visits challenge to the Court's application of *Leon's* good faith exception was not constitutionally deficient.  In short, Huntley has not shown that the argument he believes counsel should have made "was clearly stronger than issues that counsel did present."  *Webb,* 586 F.3d at 399 (quoting *Robbins*, 528 U.S. at 285, 288).  Claim 2 is without merit and is DENIED.

For these reasons, the Petition is DENIED.  Judgment shall be entered for Respondent.

## APPEAL ISSUES

A § 2255 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting

12

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition. Because any appeal by Petitioner does not deserve attention, the Court DENIES a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed in forma pauperis in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal in forma pauperis is therefore DENIED.[7]

IT IS SO ORDERED this 12th day of December 2022.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[7] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.

13